UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DONALD LEE KISSNER,

    *Plaintiff,*

v.

JOSEPH MICHAEL ORR,
LUKE ROGERS, CHRIS BROWN,
and JEREMY ZARSKI,

    *Defendants*.
_____/

CASE NO. 2:20-CV-13445
DISTRICT JUDGE LINDA V. PARKER
MAGISTRATE JUDGE PATRICIA T. MORRIS

**REPORT AND RECOMMENDATION ON DEFENDANT JEREMY ZARSKI'S MOTION FOR SUMMARY JUDGMENT (ECF No. 15)**

**I.  RECOMMENDATION**

For the reasons set forth below, **IT IS RECOMMENDED** that Defendant Jeremy Zarski's Motion for Summary Judgment (ECF No. 15) be **GRANTED.**

**II.  REPORT**

  **A.  Background**

On December 18, 2020, Plaintiff Donald Lee Kissner filed a *pro se* civil complaint in this Court under 42 U.S.C. § 1983 (ECF No. 1.) He alleges that on August 20, 2020, he "was drugged" and attempted to set himself on fire. (ECF No. 1, PageID.6.) One Shannon Boudro called 911, and Police Officers Joseph Orr and Luke Rogers responded. (*Id.*) Plaintiff alleges that the officers placed him in their patrol car "with no medical attention via calling for EMS or anything." (*Id.*) He

1

states that he sat in the patrol car for one hour and 40 minutes "covered from his head to his toes in lighter fluid." (*Id*. at PageID.6-7.) After that time, the officers took Plaintiff to the hospital. (*Id*. at PageID.7.) He alleges that the officers knew that he was covered in lighter fluid at 8:43 p.m. (*Id*. at PageID.8.) Plaintiff states that Dr. Zarski knew of his suicide attempt at 10:30 p.m., but that it was not until 3:43 a.m. that a nurse asked if anyone had cleaned up his chemical burns. (*Id*.) At that time the nurse made him take a shower. (*Id*.) Plaintiff alleges that as a result of the delay, he has "scars on his genitals, belly, head, and underarms from the chemical burns." (*Id*.)

Exhibit B to Plaintiff's complaint is a written report of Officer Orr, who writes that on August 20, 2020, he and Officer Rogers were dispatched to the scene where Plaintiff had attempted suicide, and their investigation into the call "lead (sic) to the hospitalization of the suspect for a Psych Evaluation and investigation into Felonious Assault and Attempted Arson." (*Id*. at PageID.14.) Orr stated that upon arriving at the scene, they observed Plaintiff, wearing no clothes other than a shirt tied around his waist. There was a strong odor of lighter fluid emanating from the Plaintiff. The officers detained Plaintiff for safety reasons. (*Id*.)

Plaintiff's Exhibit C appears to be a continuation of Orr's report. He, along with Officer Rogers, began to transport Plaintiff to the jail, but after Plaintiff made several statements about wanting to kill himself, they instead took him to the Owosso Memorial Hospital for a psychiatric evaluation. (*Id*. at PageID.16.) Upon arriving at

the hospital, the officers escorted Plaintiff to the emergency room, where Orr completed an Involuntary Petition for a Psychological Evaluation. Plaintiff was then released into the hospital's custody pending the petition. (*Id*.)

Plaintiff's Exhibit D is the Probate Court Petition for Mental Health Treatment submitted by Officer Orr. In the Petition, Orr states, "Subject was covered in lighter fluid and made several statements that he was going to kill himself and light himself on fire." (*Id*. at PageID.18.)

Plaintiff's Exhibit E is a Clinical Certificate submitted to the Probate Court by Dr. Jeremy Zarski, stating that he examined Plaintiff at 10:30 p.m. on August 20, 2020, and determined that he was mentally ill, that is, that Plaintiff "has a substantial disorder of thought or mood that significantly impairs judgment, behavior, capacity to recognize reality, or ability to cope with the ordinary demands of life." (*Id.* at PageID.20.) Dr. Zarski diagnosed "acute suicidal ideation, noting "multiple suicidal threats and attempts including pouring gas on himself to light himself on fire." (*Id*.)

Defendant Jeremy Zarski filed his motion for summary judgment on April 20, 2021. (ECF No. 15.) Plaintiff has not filed a response. Appended to the motion as Exhibit 1 is Dr. Zarski's affidavit. He states that on August 20, 2020, he was working as an emergency department physician at Owosso Memorial Hospital, and in that capacity he conducted a psychological evaluation of Plaintiff to determine if he was at risk of harming himself or others. (ECF No. 15-1, PageID.111.) He states, "At all

3

times relevant to the allegations in the Complaint, I was acting as a private physician providing care through the emergency department at Owosso memorial Hospital. I was not employed by the state or a state agency." (*Id.*) He further states, "All of my interactions and determinations relating to Plaintiff were based entirely on my own professional judgment and opinion." (*Id.*)

### B. Summary Judgment Standard

A court will grant a party's motion for summary judgment when the movant shows that "no genuine dispute as to any material fact" exists. Fed. R. Civ. P. 56(a). In reviewing the motion, the court must view all facts and inferences in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The moving party bears "the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-movant's case." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989) (quoting *Celotex Corp. v. Cartrett*, 477 U.S. 317, 323 (1986))(internal quotation marks omitted). In making its determination, a court may consider the plausibility of the movant's evidence. *Matsushita*, 475 U.S. at 587-88. Summary judgment is also proper when the moving party shows that the non-moving party cannot meet its burden of proof. *Celotex*, 477 U.S. at 325.

The non-moving party cannot merely rest on the pleadings in response to a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248

(1986). Instead, the non-moving party has an obligation to present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos.*, 8 F.3d 335, 339-40 (6th Cir. 1993). The non-movant cannot withhold evidence until trial or rely on speculative possibilities that material issues of fact will appear later. 10B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2739 (3d ed. 1998). "[T]o withstand a properly supported motion for summary judgment, the non-moving party must identify specific facts and affirmative evidence that contradict those offered by the moving party." *Cosmas v. Am. Express Centurion Bank*, 757 F. Supp. 2d 489, 492 (D. N.J. 2010). In doing so, the non-moving party cannot simply assert that the other side's evidence lacks credibility. *Id.* at 493. And while a *pro se* party's arguments are entitled to liberal construction, "this liberal standard does not . . . 'relieve [the party] of his duty to meet the requirements necessary to defeat a motion for summary judgment.'" *Veloz v. New York*, 339 F. Supp. 2d 505, 513 (S.D. N.Y. 2004) (quoting *Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 50 (2nd Cir. 2003)). "[A] *pro se* party's 'bald assertion,' completely unsupported by evidence, is not sufficient to overcome a motion for summary judgment." *Lee v. Coughlin*, 902 F. Supp. 424, 429 (S.D. N.Y. 1995) (quoting *Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991)).

When the non-moving party fails to adequately respond to a summary judgment motion, a district court is not required to search the record to determine whether genuine issues of material fact exist. *Street*, 886 F.2d at 1479-80. The court will rely on the "facts presented and designated by the moving party." *Guarino v. Brookfield Twp. Trs.*, 980 F.2d 399, 404 (6th Cir. 1992). After examining the evidence designated by the parties, the court then determines "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 1310 (6th Cir. 1989) (quoting *Anderson*, 477 U.S. at 251-52). Summary judgment will not be granted "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248.

### C. Plaintiff Cannot Show That Dr. Zarski Was a State Actor

Dr. Zarski argues that because he was not a state actor, he cannot have liability under 42 U.S.C. § 1983.

To establish a claim under § 1983, a plaintiff must show the deprivation of a constitutional right "by a person acting under the color of state law." *Wolotsky v. Huhn*, 960 F.2d 1331, 1335 (6th Cir. 1992) (citing *Jones v. Duncan*, 840 F.2d 359, 361-62 (6th Cir. 1988)). "The principal inquiry in determining whether a private party's actions constitute 'state action' under the Fourteenth Amendment is whether

the party's actions may be 'fairly attributable to the state.'" *Id*. (quoting *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982)).

The Sixth Circuit has set forth three tests to determine whether a private party's actions are attributable to the state-the public function test, the state compulsion test, and the nexus test. Citing *Wolotsky*, 960 F.2d at 1335, the Court in *Ellison v. Garbarino*, 48 F.3d 192, 195 (6th Cir. 1995), summarized the tests as follows:

> The public function test requires that the private entity exercise powers which are traditionally exclusively reserved to the state. The typical examples are running elections or eminent domain. The state compulsion test requires proof that the state significantly encouraged or somehow coerced the private party, either overtly or covertly, to take a particular action so that the choice is really that of the state. Finally, the nexus test requires a sufficiently close relationship (i.e., through state regulation or contract) between the state and the private actor so that the action taken may be attributed to the state. (Internal punctuation and citations omitted).

Here, Dr. Zarski's one-half hour emergency room examination of Plaintiff and his report to the Probate Court that Plaintiff was mentally ill are insufficient to show that he was a *de facto* state actor. In *Ellison*, the plaintiff's wife, believing that the plaintiff would become violent, obtained a court order for the Plaintiff to be transported for a psychological evaluation. Sheriff's Deputies transported the plaintiff to a private physician's office for the evaluation, and the doctor completed a certification that was necessary for the plaintiff's involuntary commitment. The Sixth Circuit held that the doctor was not a state actor under any of the three tests.

7

The Court found that under the compulsion test, "the Tennessee statute does not compel or encourage private individuals to pursue involuntary commitment." *Id.*, 48 F.3d at 196. The Court also cited *Janicsko v. Pellman*, 774 F.Supp. 331, 338-39 (M.D. Pa. 1991) which found it "significant that physicians retained the discretion under the Pennsylvania statute to determine when commitment is necessary." *Id*.

Like the Tennessee statute in *Ellison*, the Michigan Mental Health Code does not compel involuntary commitment, but provides that a person may be committed only upon examination and certification by an examining physician:

> If the examining physician or psychologist does not certify that the individual is a person requiring treatment, the individual shall be released immediately. If the examining physician or psychologist executes a clinical certificate, the individual may be hospitalized under [M.C.L. § 1423].[1]

M.C.L. § 330.1429.

As in *Janicsko*, under the Michigan statute the examining physician retains the discretion to determine whether or not commitment is necessary. In this case, Dr. Zarski affirms in his affidavit that all of his interactions and determinations regarding the Plaintiff were based on his own professional judgment.[2]

The *Ellison* Court also found that the plaintiff made "no attempt to establish a sufficient 'nexus' between defendants," and therefore the nexus test was

---

[1] Section 1423 sets forth requirements for mental health hospitalizations.
[2] Because Plaintiff has not responded to this motion, the Court will rely on Dr. Zarski's submission. *Guarino*, 980 F.2d at 404.

inapplicable. 48 F.3d at 196. Likewise, the Court found that the plaintiff had offered no analysis, historical or otherwise, supporting the public function test, adding, "Considering that plaintiff bears the burden on this issue, this failure alone renders the test inapplicable." *Id*. So too in the present case, the Plaintiff has not shown that Dr. Zarski was a state actor under any of the three tests.

In this case, Dr. Zarski's role was to evaluate Plaintiff's mental status, and in carrying out that role, he was not a state actor. Nevertheless, Plaintiff is not challenging his commitment for mental health evaluation or treatment, but rather the alleged delay in obtaining medical attention necessitated by being covered in lighter fluid. And it is true that the state has an obligation to provide medical care to those who are in custody. *See West v. Atkins,* 487 U.S. 42 (1988).

In *Carl v. Muskegon County*, 763 F.3d 592 (6th Cir. 2014), the Sixth Circuit found that a private doctor who performed a psychological evaluation of the plaintiff was a state actor. The plaintiff in *Carl* was a pretrial detainee. Distinguishing *Ellison*, and finding that the doctor met the public function test, the Court centered its conclusion on the fact that the plaintiff was in state custody:

> More importantly, the plaintiff in *Ellison* was not a ward of the state. *Ellison,* 48 F.3d at 194. This distinction is key. Because *Ellison* did not arise in the context of providing mental health care to those in the state's custody, the district court should not have relied on that case.

*Id*. at 597.

9

In the present case, the Plaintiff was not in state custody when Dr. Zarski examined him. At that point, he was not under arrest and he was not a pretrial detainee. Indeed, Officer Orr's report, appended to Plaintiff's complaint as Exhibit C, affirmatively states that Plaintiff was released to the custody of the hospital. (ECF No. 1, PageID.16.) Accordingly, the controlling case is *Ellison*, not *Carl*.

Summary judgment should be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Daniels v. Woodide*, 396 F.3d 730, 735 (6th Cir. 2005). Again, Plaintiff has not responded to the present motion, and has failed to establish any genuine factual dispute as to whether Dr. Zarski was a state actor, an essential element of a § 1983 claim.

### D. Conclusion

For the reasons discussed above, **IT IS RECOMMENDED** that Defendant Jeremy Zarski's Motion for Summary Judgement be **GRANTED.**

### III. REVIEW

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. §

636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this R&R. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Dakroub v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this R&R to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: August 19, 2021              S/ PATRICIA T. MORRIS
                                   Patricia T. Morris
                                   United States Magistrate Judge