### UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

DONALD LEE KISSNER,

        *Plaintiff*,

*v.*

JOSEPH MICHAEL ORR,
LUKE ROGERS, CHRIS BROWN,
and JEREMY ZARSKI,

        *Defendants*.

_____/

CASE NO. 2:20-CV-13445
DISTRICT JUDGE LINDA V. PARKER
MAGISTRATE JUDGE PATRICIA T. MORRIS

## REPORT AND RECOMMENDATION ON DEFENDANTS JOSEPH MICHAEL ORR AND LUKE ROGERS' MOTION TO DISMISS PURSUANT TO FED. R. CIV P. 12(B)(6) (ECF NO. 14)

## I. RECOMMENDATION

For the reasons set forth below, **IT IS RECOMMENDED** that Defendants Joseph Michael Orr and Luke Rogers'[1] Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) (ECF No. 14) be **GRANTED.**

## II. REPORT

### A. Background

On December 18, 2020, Plaintiff Donald Lee Kissner filed a *pro se* civil complaint in this Court under 42 U.S.C. § 1983 (ECF No. 1.)  He alleges that on August 20, 2020, he

---

[1] I note that this officer's name is spelled "Rogers" in the docket and the complaint (ECF No. 1) but spelled "Rodgers" in Defendants' motion to dismiss. (ECF No. 14.) This Report and Recommendation will defer to the spelling as reflected in the docket at this time.

"was drugged" and attempted to set himself on fire. (ECF No. 1, PageID.6.) One Shannon Boudro called 911, and Police Officers Joseph Orr and Luke Rogers responded. (*Id*.) Plaintiff alleges that the officers placed him in their patrol car "with no medical attention via calling for EMS or anything." (*Id*.) He states that he sat in the patrol car for one hour and 40 minutes "covered from his head to his toes in lighter fluid." (*Id*. at PageID.6-7.) After that time, the officers took Plaintiff to the hospital. (*Id*. at PageID.7.) He alleges that the officers knew that he was covered in lighter fluid at 8:43 p.m. (*Id*. at PageID.8.) Plaintiff states that Dr. Zarski knew of his suicide attempt at 10:30 p.m., but that it was not until 3:43 a.m. that a nurse asked if anyone had cleaned up his chemical burns. (*Id*.) At that time the nurse made him take a shower. (*Id*.) Plaintiff alleges that as a result of the delay, he has "scars on his genitals, belly, head, and underarms from the chemical burns." (*Id*.)

Exhibit B to Plaintiff's complaint is a written report of Officer Orr, who writes that on August 20, 2020, he and Officer Rogers were dispatched to the scene where Plaintiff had attempted suicide, and their investigation into the call "lead (sic) to the hospitalization of the suspect for a Psych Evaluation and investigation into Felonious Assault and Attempted Arson." (*Id*. at PageID.14.) Orr stated that upon arriving at the scene, they observed Plaintiff, wearing no clothes other than a shirt tied around his waist. There was a strong odor of lighter fluid emanating from the Plaintiff. The officers detained Plaintiff for safety reasons. (*Id*.) Charcoal lighter fluid and a lighter were recovered from the Plaintiff. (*Id*.)

Plaintiff's Exhibit C appears to be a continuation of Orr's report. He states that he double locked the handcuffs for Plaintiff's safety, and advised him that he was under arrest

for felonious assault. Officer Orr, along with Officer Rogers, began to transport Plaintiff to the jail, but after Plaintiff made several statements about wanting to kill himself, they instead took him to the Owosso Memorial Hospital for a psychiatric evaluation. (*Id*. at PageID.16.) During this time, Plaintiff told the officers that he was only trying to kill himself, and that he was only trying to spray himself with lighter fluid. He admitted that the purple lighter found at the scene was his. (*Id*.)

Upon arriving at the hospital, the officers escorted Plaintiff to the emergency room, where Orr completed an Involuntary Petition for a Psychological Evaluation.  Plaintiff was then released into the hospital's custody pending the petition. (*Id*.) The report does not indicate that Plaintiff complained about burns or skin irritation from the lighter fluid.

### B.  Motion to Dismiss Standard

A motion to dismiss under Rule 12(b)(6) challenges the legal sufficiency of the complaint with regard to whether it states a claim upon which relief can be granted. When deciding a motion under this subsection, "[t]he court must construe the complaint in the light most favorable to the plaintiff, accept all the factual allegations as true, and determine whether the plaintiff can prove a set of facts in support of its claims that would entitle it to relief." *Bovee v. Coopers & Lybrand C.P.A.*, 272 F.3d 356, 360 (6th Cir. 2001). As the Supreme Court held in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), a complaint must be dismissed pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted if the complaint does not plead "enough facts to state a claim to relief that is plausible on its face." *Id*. at 570 (rejecting the traditional Rule 12(b)(6) standard set forth

in *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957)). Under Rule 12(b)(6), "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citations omitted). Even though a complaint need not contain "detailed" factual allegations, its "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (citations omitted).

The Supreme Court has explained that the "tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although Rule 8 "marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era," it "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* "Determining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Thus, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.... When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* "In determining whether to grant a Rule 12(b)(6) motion, the court primarily considers the allegations in the complaint, although matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint, also may be taken into account." *Nieman v. NLO, Inc.*,

4

108 F.3d 1546, 1554 (6th Cir. 1997) (quoting 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357 (2d ed. 1990)). This circuit has further "held that 'documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [the plaintiff's] claim.'" *Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 1997) (quoting *Venture Assoc. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)); *Yeary v. Goodwill Indus.–Knoxville, Inc.*, 107 F.3d 443, 445 (6th Cir. 1997).

## C.   Qualified Immunity

Defendants argue that they are entitled to qualified immunity. "The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (1999) (internal citations omitted). Further,

> Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably. The protection of qualified immunity applies regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact.

> Because qualified immunity is an immunity from suit rather than a mere defense to liability[,] it is effectively lost if a case is erroneously permitted to go to trial. Indeed, we have made clear that the driving force behind the creation of the qualified immunity doctrine was a desire to ensure that insubstantial claims against government officials will be resolved prior to discovery. Accordingly, we repeatedly have stressed the importance of resolving immunity questions at the earliest stage in litigation.

*Id.* at 231–32 (internal citations omitted).

"If the law did not put the officer on notice that his conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate." *Saucier v. Katz*, 533 U.S. 194, 202 (2001). The *Saucier* Court laid out a two-step process for determining whether an official may claim qualified immunity: first, "Taken in the light most favorable to the party asserting the injury, do the facts show the officer's conduct violated a constitutional right?"; and second, "the next . . . step is to ask whether the right was clearly established." *Id*. at 201. Under *Saucier*, the inquiry was sequential, requiring the district court to first consider whether there was a constitutional violation. However, in *Pearson,* the Supreme Court held that the two-step sequential analysis set forth in *Saucier* is no longer mandatory. Rather, *Pearson* commended the order of inquiry to the judge's discretion, to be exercised on a case-by-case basis.

The inquiry into whether the right is clearly established "must be undertaken in light of the specific context of the case, not as a broad general proposition; and it serves to advance understanding of the law . . ." *Id*.  The right at issue must be clearly established "in a more particularized, and hence more relevant sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). The facts are to be "viewed in the light most favorable to the plaintiff[.]" *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 302 (6th Cir. 2005).

Once the defense of qualified immunity is raised, the plaintiff bears the burden of proving that the defendant is not entitled to qualified immunity.  *Rodriguez v. Passinault*, 637 F.3d 675, 689 (6th Cir. 2011).

In the present case, Plaintiff was in police custody from the time he was handcuffed and placed in the patrol car until he was released to the custody of the hospital, a period that Plaintiff alleges was one hour and 40 minutes. (ECF No. 1, PageID.7.) In a generalized sense, he had a right under the Fourteenth Amendment to be afforded medical care for his serious medical needs during this time, analogous to the Eight Amendment deliberate indifference standard for individuals who are serving custodial sentences. *See Winkler v. Madison Cty.*, 893 F.3d 877, 890 (6th Cir. 2018) ("The Eighth Amendment's prohibition on cruel and unusual punishment generally provides the basis to assert a § 1983 claim of deliberate indifference to serious medical needs, but where that claim is asserted on behalf of a pre-trial detainee, the Due Process Clause of the Fourteenth Amendment is the proper starting point."). *See also Troutman v. Louisville Metro Dep't of Corr.*, 979 F.3d 472, 482–883 (6th Cir. 2020) ("[F]or pretrial detainees…this right to adequate medical treatment attaches through the Due Process Clause of the Fourteenth Amendment, which affords pretrial detainees rights analogous to those of prisoners. A prison official violates that right to adequate medical treatment when he or she acts with deliberate indifference to a pretrial detainee's serious medical needs.") (internal citations omitted).

The deliberate indifference standard has both an objective and a subjective component. "For the objective component, the detainee must demonstrate the existence of a sufficiently serious medical need." *Spears v. Ruth*, 589 F.3d 249, 254 (6th Cir. 2009). "To show that the medical need was sufficiently serious, the plaintiff must show that the conditions of incarceration imposed a 'substantial risk of serious harm.'" *Troutman*, 979 F.3d at 482 (quoting *Miller v. Calhoun County*, 408 F. 3d 803, 812 (6th Cir. 2005)). Under

the subjective standard, "an inmate must show both that an official knew of her serious medical need and that, despite this knowledge, the official disregarded or responded unreasonably to that need." *Downard for Est. of Downard v. Martin*, 968 F.3d 594, 600 (6th Cir. 2020). "The failure to alleviate a significant risk that an officer 'should have perceived but did not' is insufficient for a claim of deliberate indifference." *Troutman*, 979 F.3d at 483 (quoting *Farmer v Brennan*, 511 U.S. 825, 838 (1994)).

Officers Orr and Rogers responded to a dispatch reporting that someone was trying to set himself on fire. When they arrived on the scene, they observed Plaintiff, who smelled of lighter fluid, holding a cigarette. The most obvious and most serious risk of substantial harm to the Plaintiff was the risk that he would commit suicide by setting himself on fire. Indeed, according to Orr's report, which is appended to the complaint as Exhibit B, the Plaintiff, who was agitated and verbally aggressive, "made several statements that he wanted to light himself on fire and wanted to kill himself." (ECF No. 1, PageID.14.) In addition, Plaintiff was smoking a cigarette, and failed to comply with the officers' orders to put it out. (*Id*.) The officers responded appropriately and reasonably to the risk by removing the cigarette, handcuffing the Plaintiff, and detaining him "for safety reasons" in the back of the patrol vehicle (*Id*. at PageID.14, 16.) They also secured the bottle of lighter fluid and the lighter. (*Id*. at PageID.14.) Following a short investigation at the scene, Plaintiff was taken to the hospital. (*Id*. at PageID.16.) At the hospital, Orr took the additional step of completing an Involuntary Petition for a Psychological Evaluation and releasing Plaintiff into the hospital's custody. (*Id*. at PageID.16, 18.)

Given the overriding concern that Plaintiff would commit suicide by setting himself on fire, it would not have been objectively obvious to these officers that there was a medical need to wash off the lighter fluid, or that failure to do so immediately posed a "substantial risk of serious harm." *Troutman*, 979 F3d at 482. It should be noted that Plaintiff does not allege that he told the officers he was suffering any discomfort from the lighter fluid. Plaintiff has therefore not met the objective test for deliberate indifference.

Nor has he met the subjective test. While Orr noted that Plaintiff smelled of lighter fluid, neither he nor Rogers disregarded that fact. After a short investigation, they restrained Plaintiff for his safety and took him to the hospital. The longer delay in providing Plaintiff with a shower to wash off the lighter fluid occurred at the hospital, where he alleges, it was not until 3:43 a.m. that a nurse asked him if anyone had cleaned up is chemical burns. (*Id*. at PageID.8.) This was over five hours after he arrived at the hospital before 10:22 p.m.[2] Even if the officers had called paramedics to the scene, as Plaintiff contends they should have done, at best Plaintiff would have arrived at the hospital somewhat sooner—but once he was released to the hospital's custody, he would still have had a five-hour delay in getting a shower. The Defendant officers are not vicariously liable for the hospital's or Dr. Zarski's actions after Plaintiff was no longer in their custody.

Qualified immunity "'provides ample support to all but the plainly incompetent or those who knowingly violate the law.'" *Burns v. Reed*, 500 U.S. 478, 494-95 (1991)

---

[2] Dr. Zarski's Clinical Certificate (ECF No. 1, PageID.20) notes that his examination commenced at 10:30 p.m. Medical records appended to the complaint show that Plaintiff arrived at the hospital at 10:22 p.m. (*Id*. at PageID.22.)

(quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). Here, Orr and Rogers responded reasonably to Plaintiff's medical/psychological needs. Even if we assume that they failed to draw an inference that Plaintiff might suffer chemical burns from the lighter fluid, that would amount to negligence at most, and negligence will not support a finding of deliberate indifference. *See Farmer*, 511 U.S. at 835 (holding that an Eighth Amendment violation requires a "state of mind more blameworthy than negligence").

Because Plaintiff has not plausibly pled a constitutional violation, these Defendants are entitled to qualified immunity.

### D.    Governmental Immunity

To the extent that Plaintiff also asserts a state law negligence claims, these Defendants are entitled to statutory immunity under Michigan's involuntary commitment law. Specifically, M.C.L. § 330.1427b(1) provides:

> (1) A peace officer who acts in compliance with this act is acting in the
>     course of official duty and is not civilly liable for the action taken.

An exception to immunity exists only where the officer "engages in behavior involving gross negligence or wilful and wanton misconduct." M.C.L. § 330.1427b(2). "Gross negligence" is defined as conduct "so reckless as to demonstrate a substantial lack of concern for whether an injury results." M.C.L. § 691.1407(8)(a). As discussed above, Officers Orr and Rogers secured an individual who was threatening suicide by self-immolation, took away his lit cigarette, lighter

fluid, and lighter, transported him to the hospital, and petitioned for an involuntary psychological evaluation. This is the antithesis of gross negligence or recklessness.

### E.    Conclusion

For the reasons discussed above, **IT IS RECOMMENDED** that Defendants Orr and Rogers' Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) (ECF No. 14) be **GRANTED.**

### III.    <u>REVIEW</u>

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this R&R. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Dakroub v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant

to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this R&R to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: August 31, 2021                             S/ PATRICIA T. MORRIS
                                                  Patricia T. Morris
                                                  United States Magistrate Judge